2 So.2d 749

ROCHELL et al. v. OATES et al.

6 Div. 807.

Supreme Court of Alabama.

June 5, 1941.

374

Ralph W. Quinn, T. J. Lamar, and W. F. Spencer, all of Birmingham, for appellants.

Lange, Simpson, Brantley & Robinson and Mullins & Deramus, all of Birmingham, for appellees.

THOMAS, Justice.

The appeal sought a review of rulings on demurrer.

The amended demurrer to the bill as amended, or grounds thereof, on which the court acted and sustained are numerous. The court did not rest the decree on specific grounds. This has necessitated the due grouping of the same by counsel. This effort to simplify the decision is to be commended. Grounds of demurrer 1 to 7, inclusive, are to the effect that the bill is without equity.

It is declared that the necessity for an accounting by a statutory trustee or fiduciary, whose duty it is to account, "is an implied ground of equity."

Mr. Pomeroy's Equity Jurisprudence states the rule in the following language: " 'The instances in which the legal remedies are held to be inadequate, and therefore a suit in equity for an accounting proper, are: 1. Where there are mutual accounts between the plaintiff and the defendant,—that is, where each of the two parties has received and paid on account of the other; 2. Where the accounts are all on one side, but there are circumstances of great complication, or difficulties in the way of adequate relief at law; 3. *Where a fiduciary relation exists between the parties, and a duty rests upon the defendant to render an account.'* (Italics supplied.) 4 Pomeroy's Equity Jurisprudence (4th Ed.) § 1421." Marx v. Marx, 226 Ala. 684, 148 So. 418, 419. See also Glennon et al. v. Touart, 209 Ala. 437, 96 So. 336.

It is shown by the bill, when filed, that complainant and respondents were stockholders and directors of the corporation dissolved under the statute; that then there were uncollected or undistributed assets and the aid of a court of equity is invoked, under the averred facts, to require the due collection and distribution thereof to the several stockholders under the laws having application thereto.

In Pankey et al. v. Lippman et al., 187 Ala. 199, 65 So. 771, 772, it is said:

"The legal effect of Code, § 3516 [Code 1940, Tit. 10, § 110]—manifestly so intended by the lawmakers—is to constitute the property and rights of a corporation dissolved otherwise than by judicial decree a trust fund, with the directors as trustees, to effect the righteous purposes set down in the statute. One of these is to pay the obligations incurred, assumed, or imposed during the active life of the corporation. Given a creditor who may invoke the powers of a court of equity to declare, govern, and enforce rights and remedies attaching or affecting a trust estate or a trust function, a bill cannot be without equity that would invoke equity's authority to promote and effect the due and just administration of a trust thus established, for the purposes the statute (section 3516) plainly intends. As for property, the subject of the trust estate, the statute (section 3516) expressly provides:

"The trustees 'are jointly and severally liable to its creditors and stockholders to the extent of the property which may come into their hands.'

"The bill carries sufficient averments to invoke the liability thus declared. If the complainants are creditors of a class who may implead the director-trustees in the premises, their bill shows them to be parties with a particular concern and interest in the proper administration of the trust existing when the bill was filed."

See, also, Code of 1923, § 7069 et seq., Code 1940, Tit. 10, §§ 110, 156 et seq.; Carns v. Filler, 218 Ala. 100, 117 So. 672; 48th St. Inv. Co. v. Fairfield-Amer. Nat. Bank, 223 Ala. 44, 134 So. 803; Burg v. Smith et al., 222 Ala. 600, 133 So. 687; Goodwyn et al. v. Union Springs Guano Co., 228 Ala. 173, 153 So. 246; Ex parte Davis, 230 Ala. 668, 162 So. 306.

In Hawkins, Probate Judge v. Pure Oil Co., 232 Ala. 660, 169 So. 307, 309, Justice Gardner (now Chief Justice), for the court, said of directors after dissolution of corporation for the period limited by statute, as follows: "We have such a statute in this state concerning domestic corporations (Fitts v. National Life Ass'n, 130 Ala. 413, 30 So. 374), and their continued existence for a limited period with the directors as statutory trustees. Sections 7063 and 7069, Code 1923 [Code 1940, Tit. 10, §§ 104, 110]. Many states have similar provisions, as note the Florida statute to like effect in Black v. Sullivan Timber Co., 147 Ala. 327,

376

40 So. 667. A statute of similar import exists also in Delaware, the state of the domicile of the Wofford Oil Company. See section 1954, Revised Code of Delaware 1915, as amended Laws of Delaware 1925, c. 112, p. 283."

As such trustees of a dissolved corporation, they are severally and jointly liable to creditors and stockholders, and may be sued jointly or severally for an accounting as such trustees to all the stockholders, and such a suit may be brought by a single stockholder or shareholder, without bringing into court all other stockholders. Buckley v. Anderson, 137 Ala. 325, 34 So. 238; Pankey et al. v. Lippman, supra, 187 Ala. 199, 65 So. 771. Thus the several grounds of demurrer challenging the bill for not making all stockholders parties were improperly sustained.

The grounds of demurrer taking the point that there was a plain and adequate remedy at law are not well founded. See authorities collected in 39 Cyc. 446. We have indicated that a court of equity will promote and effectuate a just administration of the trust created by statute. Hawkins, Probate Judge v. Pure Oil Co., 232 Ala. 660, 169 So. 307.

The complainants offered to do equity in the premises (paragraph 14 of bill as amended). Thus the bill is not subject to the grounds of demurrer directed to that phase of the bill.

The bill in this case was filed by R. R. Rochell on December 6, 1939. After his death was suggested, the case was revived by decree rendered February 20, 1940, and more than thirty days had elapsed prior to the filing of the amended bill, which was June 8, 1940. The revival of a cause of action is not the institution of a new suit, but a continuation of the original cause of action. Therefore, this ground of demurrer should have been overruled.

Grounds of demurrer (d), challenging the right of the executors of the estate of R. R. Rochell to continue the prosecution of the suit, were improperly sustained.

Grounds of demurrer challenging the bill for failure to make demand upon respondent J. F. Oates, or the necessity for a demand for restitution and distribution were not well taken. The averments are sufficient for the bill shows, and it is stated as a fact, that respondent J. F. Oates had in his possession undistributed funds, proceeds and assets of said dissolved corporation—which he has failed and refused to distribute and divide, as required by law, to those entitled thereto, viz., creditors and stockholders of said dissolved corporation, which, upon demurrer, must be taken as true.

The respondents other than J. F. Oates were certainly proper parties and no authority in support of this point is necessary. The bill has a single purpose,—an accounting of assets of a dissolved corporation, and it is brought against certain parties who, it is alleged and averred in the bill, were directors, now trustees of said dissolved corporation, from whom an accounting is sought. Such a bill has a singleness of purpose and, therefore, cannot be said to be multifarious.

Demurrers directed to the bill as a whole will be properly overruled since the bill has equity. Crawford v. Horton, 234 Ala. 439, 441, 175 So. 310, 316.

The exhibits referred to in the bill and made a part thereof support further that pleading, and on demurrer, the verity of such exhibits are taken as true. Grimsley v. First Ave. Coal & Lumber Co., 217 Ala. 159, 115 So. 90; Birmingham Electric Co. v. Alabama Public Service Commission, 233 Ala. 675, 173 So. 19. When so aided and taken as true, on demurrer this court can see that the right to an accounting and distribution of trust funds will warrant a court of equity to call upon the respondents to defend. The grounds of demurrer directed to this phase of the bill were improperly sustained.

The grounds of demurrer are not well assigned to the phase of the bill that J. F. Oates had in his possession undistributed funds, proceeds and assets of the said dissolved corporation in the amount of, towit, $50,000, which he has failed and refused to distribute and divide as required by law to those entitled thereto. The averment that respondent Oates was under duty to respond to such demand made upon him or other respondents is a sufficient statement of a fact. The averment that respondent Oates, as director-trustee has in his possession as undistributed assets of a dissolved corporation, taken in connection with the other averments and the purpose of the bill is a statement sufficiently definite of a fact, towit, that as trustee he has $50,000 as assets, and that he refused to account for the same and make distribution thereof to complainant. The

contention of respondents in the ground of demurrer assigned, that "such a statement was a mere conclusion of the pleader and is not supported by an allegation of fact in said bill of complaint," is without merit. We are of opinion and hold that such grounds of demurrer were improperly sustained.

A creditor of a corporation can maintain a bill in equity to recover unpaid stock in a corporation. The right is also vested in an innocent stockholder. Roman v. Dimmick, 115 Ala. 233, 22 So. 109. Any payment of money to any person, including stockholders, by the officers or directors of a corporation, so as to give a preference to a party or parties, is not only a fraud upon the other stockholders, but a fraud upon the law. Hall & Farley, Trustees v. Henderson, 126 Ala. 449, 28 So. 531, 61 L. R.A. 621, 85 Am.St.Rep. 53.

The word "asset", as used in the statute (Code of 1923, § 7062, Code 1940, Tit. 10, § 103), is broad enough to include unpaid subscriptions to capital stock. Curry v. Woodward, 53 Ala. 371, 376. If the stock of a corporation is issued contrary to Section 234 of the Constitution of Alabama, such stock is void. Williams v. Evans, 87 Ala. 725, 6 So. 702, 6 L.R.A. 218. A court of equity follows the proceeds of property fraudulently conveyed and subjects the holder of the legal title into a trustee, subject to the court's decree.

In Dickinson et al. v. National Bank of Republic, 98 Ala. 546, 550, 14 So. 550, 552, it is said:

"'A court of equity follows the proceeds of the property, and affords a remedy by turning the legal owner into a trustee for the benefit of creditors. The proceeds may be followed into any property in which they have been invested, so far as they can be traced. The grantee is liable for property which he has converted to his own use. If he sells the property, and receives insufficient security, the loss falls upon him, and not upon the creditors. If he impedes the creditors by unnecessary litigation, he will be held to make good all loss which may be occasioned by his unjust interference. When he gives notes as a consideration for the transfer, he furnishes the debtor with facilities for defrauding his creditors, and will therefore be held liable for the notes that are misapplied. If the property has been mixed with other property of the grantee, so that the proceeds cannot be ascertained, he may be charged with the value and interest thereon.' Bump, Fraud. Conv. 608.

"We are entirely satisfied with the correctness of the principles here stated, * * *."

The statement that $10,000, or $16,000, or $1,300 was withheld by J. F. Oates is a definite statement of facts, and the averments of how such assets are divested are collateral averments of facts essential to show how these moneys are divested or held, and as such are subject to proof.

In Orendorff v. Tallman, 90 Ala. 441, 7 So. 821, 822, it is said: "It further avers that the vendors of Orendorff had no title, and that the title was in one Benjamin F. Bean. It is insisted that these allegations of the bill in respect to the title are merely averments of legal conclusions, and that the facts showing a want of title in the defendants, and paramount title in Bean, should have been stated. It is difficult to see how the facts could have been more directly and fully averred. The averment that the defendants had no title is the averment of a naked fact, unattended by circumstances, and that the title is in Bean is a collective averment of the facts essential to constitute title in him. These are subjects of proof. * * *."

When the averments of the bill are supplemented by the exhibits, it will be noted that the authorized capital stock of the Alabama Carbon Dioxide Ice, Inc., was $150,000, and was divided into two classes, common and preferred: 50,000 shares of no-par value, designated as Class B common; and 14,000 shares of preferred, par value $10, described as Class A, 6% preferred.

The original issue of common stock to the incorporators was upon the assumption that payment of $10 for 1 share of preferred stock would entitle the original subscribers to 5 shares of common stock of no-par value. On this assumption the issue was as follows:

"J. F. Oates   1,500 shares of preferred, 7,500 shares of common.
E. H. Oates   100 shares of preferred, 500 shares of common.
K. V. Hillin   100 shares of preferred, 500 shares of common."

It is averred that J. F. Oates further subscribed for 20,000 shares of common stock to be paid for by him as follows:

"The balance of 20,000 shares of no par common stock herein provided for shall be issued to J. F. Oates in consideration of $10,000.00 cash and his services, advice, efforts, expenses and time in and about the organization, financing, management and supervision of the corporation up to the time it shall begin production and in consideration of the loss of income on his investment herein from time the same is made by him until production is begun by the corporation."

It is further averred that the cash paid in was $5,400, and the rest of the stock subscribed for by incorporators was evidenced by their several demand notes: J. F. Oates gave his demand note for $20,000; E. H. Oates gave her demand note for $800, and K. V. Hillin gave her demand note for $800.

In the application of Alabama Carbon Dioxide Ice, Inc., to the State Securities Commission to register its stock, which is exhibited, the incorporators agreed that all the stock subscribed for, as above indicated, including the 20,000 shares of common stock subscribed by J. F. Oates, in consideration of the $10,000 to be paid by him as aforesaid, was to be held in escrow by the First National Bank of Birmingham, as under an escrow agreement, which also included the deposit of the proceeds from the sale of the registered stock as authorized by the Securities Commission to the extent of $75,000.

The bill further shows, supported by Exhibit "D", that an application or notice of cancellation of said registration was filed with the State Securities Commission, seeking a release of the First National Bank of Birmingham, as under its said escrow agreement. From said application, it appears that prior to June 22, 1938, the entire assets of Alabama Carbon Dioxide Ice, Inc., had been sold to the Air Reduction Co., Inc., of New York, at a price which would realize a profit to the common stockholders; that every stockholder who had invested money in the company had already received his entire purchase back, plus all accrued dividends on the preferred stock, and after taxes were adjusted each stockholder would receive further liquidating dividends on the common stock; that a dissolution agreement had already been filed in the probate court; that an audit of the company's affairs had not then been made, but respondent J. F. Oates agreed later to furnish such audit, if required to do so by the Commission.

The averments of the bill are to the effect that the State Securities Commission granted the application and the dissolution agreement indicated.

The bill is further to the effect that the stock of the promoters was in the hands of the escrow agent, First National Bank of Birmingham, and only stock could be issued under the escrow agreement in payment of Class A, or preferred stock. It is the contention of appellant that the issue of Class B Stock after dissolution and the payment of dividends thereon, as averred in paragraph 10 of the bill, is not justified and is an element of recovery, because that issue of stock would be a mere gratuity and without consideration, and void under the Constitution of Alabama. Skinner's Alabama Constitution, p. 842, § 234.

It is averred that the charter of the corporation showed that respondent J. F. Oates had subscribed for 20,000 shares of common or non-par value stock, which was to be paid for in services rendered, and the additional sum of $10,000 in cash to be paid by him. It is further stated that the 20,000 shares of stock so subscribed for was upon the condition that he was to make no charge for his services prior to a complete organization of the company and its beginning of production. It is averred that J. F. Oates has in his possession $16,000 of the money that came into his hands as moneys of the corporation, which he now insists was paid to him as a salary, and this item is sought to be recovered.

The averments of the bill and its paragraph 10 are sufficient to inform respondent that payment was sought of said sums and that he was called upon to defend as to this charge or to substantiate his right to such sums.

We have indicated that the pleading was sufficient and definite and gave the court jurisdiction to order a full accounting for the amounts due to the respective parties in interest, the stockholders and creditors, and on final decree to order a just and true distribution of the same.

It results from the foregoing that the bill, as amended and as aided by the several exhibits, was not subject to the many demurrers directed thereto. It will not be necessary to consider the demurrer

as originally filed or as originally amended in detail.

Reversed and remanded.

GARDNER, C. J., and BROWN and LIVINGSTON, JJ., concur.