**GENERAL BEVERAGES, Inc., a corporation, Appellant,**

v.

**K. A. ROGERS, being one and the same person as Kenneth A. Rogers, Appellee.**

**No. 4826.**

United States Court of Appeals, Tenth Circuit.

Sept. 8, 1954.

G. F. Rainey, Oklahoma City, Okl. (Rainey, Flynn, Green & Anderson, Oklahoma City, Okl., on the brief), for appellant.

John H. Cantrell and Lee B. Thompson, Oklahoma City, Okl. (McInnis, Cantrell, Thompson & Sullivan, Oklahoma City, Okl., on the brief), for appellee.

Before BRATTON and HUXMAN, Circuit Judges, and RITTER, District Judge.

RITTER, District Judge.

This is an appeal from an order of the United States District Court for the Western District of Oklahoma sustaining defendant's motion for a summary judgment and dismissing the complaint.

Both Judge Bratton and Judge Huxman have reviewed the law in this Circuit applicable to summary judgments under the Federal Rules of Civil Procedure, 28 U.S.C.A., Zampos v. United States Smelting, Refining and Mining Co., 10 Cir., 1953, 206 F.2d 171; Schreffler v. Bowles, 10 Cir., 1946, 153 F.2d 1, 3. In the latter case, Judge Huxman wrote:

> "The salutary purpose of Rule 56 is to permit speedy and expeditious disposal of cases where the pleadings do not as a matter of fact present any substantial question for

determination. Flimsy or transparent charges or allegations are insufficient to sustain a justiciable controversy requiring the submission thereof. The purpose of the rule is to permit the trier to pierce formal allegations of facts in pleadings and grant relief by summary judgment when it appears from uncontroverted facts set forth in affidavits, depositions or admissions on file that there are as a matter of fact no genuine issues for trial."

█ There, the correctness and accuracy of certain computations were fortified by the affidavits of two accountants. The correctness or authenticity of the schedules were not specifically denied or disputed by appellant's answer. No affidavits were filed challenging the verified statements of the two accountants who prepared the schedules. And, the court announced the principle which disposes of the case at bar: "In the condition of the record," said Judge Huxman, "a mere general denial in the answer of the allegations of the complaint was insufficient to place in issue the correctness of the items of the schedules in Exhibit A, and the court was correct in entering summary judgment * * *." This is particularly true where, as in the case at bar, faced with the Motion for Summary Judgment, plaintiff did not traverse the verified answer of defendant nor defendant's deposition under oath. Plaintiff's complaint and reply were not verified. Plaintiff's sworn answers to interrogatories did not deny nor in any manner traverse the facts sworn to by defendant. On the contrary those facts were admitted in some important particulars. For instance, plaintiff throughout asserts that Lime Cola Company, Inc., issued, or promised to issue, its stock merely in return for defendant's written promise to pay therefor at a date some three years in the future. By the law of Alabama this is a forbidden and illegal consideration.

Schreffler v. Bowles, supra, announces the generally accepted view. Fletcher v. Krise, 1941, 76 U.S.App.D.C. 266, 120 F. 2d 809; Board of Public Instruction for Hernando County, Fla. v. Meredith, 5 Cir., 1941, 119 F.2d 712; Radio City Music Hall Corp. v. U. S., 2 Cir., 1943, 135 F.2d 715; Wilkinson v. Powell, 5 Cir., 1945, 149 F.2d 335; Gifford v. Travelers Protective Ass'n, 9 Cir., 1946, 153 F.2d 209; New York Life Ins. Co. v. Cooper, 10 Cir., 1948, 167 F.2d 651; Foster v. General Motors Corp., 7 Cir., 1951, 191 F.2d 907.

The instant case arises out of an action upon a promissory note. The payee was Lime Cola Co., Inc., Montgomery, Alabama, which company filed a petition in bankruptcy in the United States District Court for the Middle District of Alabama, Northern Division. Pursuant to an order of the court in bankruptcy, dated June 11, 1948, the assets of Lime Cola Co., Inc., which was an Alabama corporation, were transferred to Lime Cola Co., a Tennessee corporation. In July, 1952, Lime Cola Co., a Tennessee corporation, changed its name to General Beverages, Inc., a Tennessee corporation, which is the plaintiff in the present action.

(1) Plaintiff took defendant's deposition under oath which disclosed: The note in question was executed and delivered following an oral agreement that if defendant, Rogers, would interest Bob Hope and Bing Crosby in Lime Cola, introduce the officers of the company to them, get them to plug for the Lime Cola product of the payee company, and advertise it in pictures and radio, Rogers should be paid for these services in company stock. At a conference in the Beverly Hills Hotel, Bing and Bob agreed to this through defendant's efforts and subsequently fully performed. A "gentlemen's agreement" was made under which the note was given, not to evidence a debt or purchase price for stock, but merely because Mr. Berman (the president of Lime Cola) wanted something on his books, Mr. Berman assuring defendant that the stock when issued would be in payment for the serv-

ices and that when the contemplated services were performed and the stock delivered the note would be destroyed, the note being executed and delivered without any thought of its ever being paid. Berman expressly agreed at the time the note was taken by him that when Bing and Bob had carried out their part of the promotion aforesaid, the stock "would be issued and delivered" and the note "would be cancelled and thrown away". After Bing and Bob had fully performed and before the bankruptcy, Rogers demanded his stock which was refused. After the bankruptcy Rogers thought it futile to seek delivery of the stock, but did demand the return of his note, which he did not get. Defendant was not advised even that the stock had been issued till long afterwards and never was told that it had been put up by anyone as "collateral" for the note. He never saw or dealt with this stock. No demand was made on defendant prior to May 6, 1949, for the payment of the note. First demand was then made, was rejected and always thereafter was rejected.

(2) Defendant submitted interrogatories to which plaintiff filed answers, some of which defendant deemed insufficient. Thereupon defendant moved to require the plaintiff to answer further. The court's journal entry with respect to this matter is as follows:

"In the course of defendant's presentation of his 'Objection to Answers to Interrogatories and Motion to Make Answers Sufficient,' plaintiff's counsel agreed that the following statement of facts represented by him to be true to his best knowledge and belief could and should be made a part of the record herein:

"The note sued on herein was delivered to Lime Cola Company, Inc., the payee named therein, a corporation organized and existing under and by virtue of the laws of the State of Alabama, the sole consideration therefor being the promise of said Alabama corporation to issue 5,000 shares of its capital stock and deliver same to K. A. Rogers upon later payment of said note. Thereafter, stock certificates representing said 5,000 shares of stock were completed, signed and sealed by said corporation pursuant to said commitment. Said stock certificates were never delivered to said K. A. Rogers or Kenneth A. Rogers, but were thereafter held by said Lime Cola Company, Inc., an Alabama corporation, in its possession as collateral security for said promissory note until delivery of same to Lime Cola Company, a Tennessee corporation, along with said note pursuant to the order of the Alabama U. S. District Court's Order of June 11, 1948, referred to in the complaint. Plaintiff now has possession of said stock certificates.

"Based upon this statement by counsel for the plaintiff, the objection of defendant to plaintiff's answers to interrogatories and the motion to make said answers sufficient is overruled and denied."

This Order and its language were expressly approved in writing by counsel for the plaintiff.

(3) By its answers to interrogatories plaintiff stated that the note sued on was signed and delivered in Montgomery, Alabama (the payee being an Alabama corporation). The note was payable in Montgomery, Alabama. The consideration for the note was "the promise (of payee) to issue 5,000 shares of stock" of payee to the defendant. The note was not endorsed by the bankruptcy trustees until "shortly before this suit was brought", that plaintiff has no knowledge of who accepted the note from plaintiff and no knowledge of any contract or commitments leading up to the execution of the note other than the asserted agreement of defendant to buy the stock, and that plaintiff "understands" that the contract was finally consummated in Alabama.

(4) In his verified answer defendant pleads: A general denial of all allega-

tions of the complaint except as expressly admitted; no effective delivery of the note because upon conditions not performed or fulfilled; adjudication of bankruptcy of payee in 1948, when payee had only bare physical possession of the note, but no legal or enforceable title thereto, or obligation on account thereof; denial that the note was an asset transferred to or acquired by plaintiff; that there was no attempted assignment of legal title to plaintiff until long after the maturity date stated in note and until after it had been rejected by defendant and payment refused, of which plaintiff had knowledge; that the note was at all times void, illegal, and unenforceable under the laws of Alabama, and as against the declared public policy of that state; total want of consideration; the delivery of the note was upon illegal and forbidden conditions under the laws of Alabama; the conditions upon which the payee obtained physical possession of the note became impossible of performance (under the facts alleged by plaintiff) prior to its maturity date and prior to the time of performance asserted by plaintiff; because of the time, manner and method of securing possession of the note, plaintiff is not and could not legally be a holder of the note in due course.

As we have said, faced with the Motion for Summary Judgment, plaintiff did not traverse the verified answer of defendant nor defendant's deposition under oath. Plaintiff's complaint and reply were not verified. Plaintiff's sworn answers to interrogatories did not deny or in any manner traverse the facts sworn to by defendant. The stipulation of counsel recited in the court's Order of January 8, 1953, was an admission binding upon the plaintiff. It conclusively shows that the stock could not in any event be "issued" until "the later payment of the note", which according to defendant's sworn, uncontradicted testimony was to be performed by rendition of services.

Whether we adopt the plaintiff's theory, and the factual statements of record supporting it, or the defendant's theory, and the factual statements of record supporting it, the entry of the summary judgment was proper. There was no genuine issue of material fact upon either theory.

The law of Alabama prevents recovery by plaintiff because either (1) the note is void and unenforceable; and (2) defendant cannot be held estopped to urge its invalidity and unenforceability; or (3) the note has been discharged in the hands of the payee before transfer; and (4) performance of the conditions for the note's enforceability had become impossible before performance due; and (5) this plaintiff is not a holder for value in due course.

Plaintiff's theory seems to be that the note sued on was executed and delivered pursuant to an oral contract by the Lime Cola Co., Inc., and the defendant, Rogers, and that the sole consideration for the note was the issue, or the promise of the Alabama corporation, to issue, 5,000 shares of its capital stock upon the payment of the note some three years later. Thereafter stock certificates in the name of Rogers representing the 5,000 shares of stock were completed, signed and sealed by the corporation and were at all times thereafter held by the corporation as collateral security for the promissory note until delivery of that note and stock to Lime Cola Co., a Tennessee corporation, which has changed its name to General Beverages, Inc., and which now has possession of the stock certificates. It does not appear that any attempt to foreclose the collateral security has been made. Also, according to plaintiff's theory, defendant has never paid anything of value for the stock in question. The bankruptcy of Lime Cola Co., Inc., its reorganization and the transfer of all of its assets by the order of June 11, 1948, all took place at least a year and a half before the note sued on herein became due by its terms. The note was dated December 20, 1946, and was payable three years after date.

Defendant's theory is: (1) that under the constitution and statutes of Alabama an agreement to issue stock for a promis-

sory note is void as against the public policy of Alabama, and a note given pursuant to such an agreement is void and unenforceable; and, (2) that defendant cannot be held estopped to urge the invalidity and unenforceability of the note because such estoppel, if permitted, would defeat the public policy of the sovereign. Mudd v. Lanier, 247 Ala. 363, 24 So.2d 550; Nelson v. Darley, 239 Ala. 87, 194 So. 177; Awotin v. Atlas Exchange National Bank, 295 U.S. 209, 55 S.Ct. 674, 79 L.Ed. 1393; 19 Am.Jur. 602, 802 (Note 7), 804.

In the alternative, defendant contends (1) that the note has been fully performed, satisfied and discharged by the services of defendant, Bob Hope and Bing Crosby. Defendant's theory is that he had alternative methods of performance, namely to deliver the services or to pay the face of the note; and (2) that performance of the conditions for the note's enforceability had become impossible before performance was due. Upon the adjudication in bankruptcy of Lime Cola Co., Inc., the delivery of the shares to the defendant thereafter became impossible; and, (3) that the plaintiff is not a holder for value in due course because it obtained the note through a transfer of the assets of Lime Cola Co., Inc., by an order of the bankruptcy court. Ward v. Oklahoma State Bank, 51 Okl. 193, 151 P. 852, 853; Middle Tennessee Bank v. McKennon, 20 Tenn.App. 416, 99 S.W.2d 564, 565. And in addition, by plaintiff's admission, the stock certificates were attached to the note and by this action payee gave notice to plaintiff, who later purchased the note with the unendorsed stock attached, that the stock had not been paid for and was fictitious and void under Alabama law. And, moreover, in Alabama, by force of the provisions of the constitution and statutes, the illegality voids the instrument even in the hands of a holder in due course. Kuhl v. M. Gally Universal Press Co., 123 Ala. 452, 26 So. 535; Title 39, Sec. 57, Ala.Code of 1940.

The United States District Court in Oklahoma under the doctrine of Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, was obliged to follow the substantive law of the state of Oklahoma, including Oklahoma conflict of laws rules. Title 28 U.S.C.A. § 1652. Klaxon Company v. Stentor Electric Manufacturing Co., Inc., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, is the leading case where the conflict of laws question is involved. Griffin v. McCoach, 1941, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481; Cockburn v. O'Meara, 5 Cir., 1944, 141 F.2d 779; and Indiana Nat. Bank of Indianapolis v. Goss, 7 Cir., 1953, 208 F.2d 619.

The Oklahoma conflict of laws rule appears to be that the validity of the contract is determined by the law of the place of performance. The later Oklahoma authorities hold that the place of performance always governs, although some earlier cases appeared to apply the lex loci contractu. Beale, The Conflict of Laws, Sec. 332.43; Sheehan Pipe Line Construction Co. v. State Industrial Comm., 1931, 151 Okl. 272, 3 P.2d 199; Collins v. Holland, 1934, 169 Okl. 10, 34 P.2d 587. Whichever is the Oklahoma rule, the result is the same here, because Alabama is both the place of performance and the place of contracting. The plaintiff in its answer to interrogatories stated that the note sued on was signed and delivered in Montgomery, Alabama (the payee being an Alabama corporation) and the note on its face shows it was payable at the Alabama National Bank of Montgomery, Alabama.

Under the constitution, statutes and decisions of the Supreme Court of Alabama the note here sued upon is void and unenforceable. The cases relied upon by plaintiff for the contrary view of Alabama law are distinguishable because either they are suits to recover on the statutory stockholders liability or they are from jurisdictions where the transaction involving a note is held not to be void or to involve the violation of

the fundamental public policy of the state. Alabama Constitution, Sec. 234; Title 10, Sec. 26, Code of Alabama, 1940; Minge v. Clark, 1914, 190 Ala. 388, 67 So. 510; Alabama National Bank v. Halsey, 1896, 109 Ala. 196, 19 So. 522; Williams v. Evans, 1889, 87 Ala. 725, 6 So. 702. 6 L.R.A. 218.

A long line of Alabama decisions are to the same effect and most of them state expressly that the constitutional provision and statute: " * * * prevent the courts from lending their aid for the enforcement of any contract or obligation the execution of which involves a disregard of those regulations". Elyton Land Co. v. Birmingham Warehouse & Elevator Co., 92 Ala. 407, 9 So. 129, 131, 12 L.R.A. 307; Fitzpatrick v. Dispatch Publishing Co., 1887, 83 Ala. 604, 2 So. 727; Parson v. Joseph, 1891, 92 Ala. 403, 8 So. 788; Smith v. Alabama Fruit Growing & Winery Ass'n, 1899, 123 Ala. 538, 26 So. 232; Crow v. Florence Ice & Coal Co., 1905, 143 Ala. 541, 39 So. 401; Nelson v. Darley, 1939, 239 Ala. 87, 194 So. 177; Rochell v. Oates, 1941, 241 Ala. 372, 2 So.2d 749; Holloway v. Osteograph Co., 1941, 240 Ala. 507, 200 So. 197; Floyd v. State ex rel. Baker, 177 Ala. 169, 59 So. 280; Mudd v. Lanier, 247 Ala. 363, 24 So.2d 550; Tutwiler's Case [Tutwiler v. Tuskaloosa Coal, Iron & Land Co.], 89 Ala. 391, 7 So. 398; Williams v. Evans, 87 Ala. 725, 6 So. 702, 6 L.R.A. 218; Memphis & L. R. Co. v. Dow, 120 U.S. 287, 7 S.Ct. 482, 30 L.Ed. 595.

The Court of Appeals of the Ninth Circuit in Hirschfield v. McKinley, 1935, 78 F.2d 124, which went up from Arizona, fully supports the views we take here.

The short answer to this case is that, under appellant's own theory of the case and its complaint, answers to interrogatories and admissions in court, it was proper as a matter of law to grant the motion for summary judgment.

Judgment affirmed.